IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANDRA MANUEL,<br><br>           Petitioner,<br><br>v.<br><br>CLAIRE DEMATTEIS, Commissioner,[1] ALAN GRINSTEAD, Bureau Chief, and ATTORNEY GENERAL OF THE STATE OF DELAWARE,<br><br>           Respondents. | Civ. Act. No. 16-871-RGA |

## MEMORANDUM OPINION

J. Brendan O'Neill, Office of Defense Services for the State of Delaware, Wilmington, Delaware. Attorney for Petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

September 18, 2019
Wilmington, Delaware

---

[1]Commissioner Claire DeMatteis has replaced former Commissioner Robert M. Coupe, an original party to this case. *See* Fed. R. Civ. P. 11(d).

ANDREWS, UNITED STATES DISTRICT JUDGE:

Pending before the Court is an authorized Second or Successive Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Andra Manuel. (D.I. 2; D.I. 20) The State's original Motion to Dismiss the Petition for being second or successive also asserts that the Petition is time-barred. (D.I. 13) Petitioner filed a Reply. (D.I. 15) For the reasons discussed, the Court will dismiss Petitioner's § 2254 Petition as time-barred by the one-year period of limitations prescribed in 28 U.S.C. § 2244(d)(1).

I.   **BACKGROUND**

On November 7, 2002, a Delaware Superior Court jury found Petitioner guilty of trafficking in cocaine, possession of firearm during the commission of a felony ("PFDCF"), carrying a concealed deadly weapon ("CCDW"), resisting arrest, the lesser-included offenses of possession of cocaine and possession of marijuana. (D.I. 13 at 3) On January 24, 2003, the Superior Court sentenced Petitioner as an habitual offender to a total of forty-four years at Level V incarceration, suspended after thirty-five years, for all but the PDWBPP which was severed. (D.I. 13 at 4)

Petitioner filed his first § 2254 habeas petition in 2004, which the Honorable Sue L. Robinson denied on August 8, 2005. (D.I. 16 at 2)

On April 11, 2007, Petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 (first "Rule 61 motion"), which the Superior Court denied on May 29, 2009. (D.I. 13 at 4) The Delaware Supreme Court affirmed that decision on November 2, 2009. (D.I. 13 at 4)

On June 4, 2015, Delaware's Office of Defense Services ("OPD") filed another Rule 61 motion ("second Rule 61 motion") on Petitioner's behalf, which the Superior Court denied on

June 19, 2015. (D.I. 13 at 5) The Delaware Supreme Court affirmed that decision on January 28, 2016. (D.I. 13 at 5)

On September 26, 2016, the OPD filed a § 2254 Petition on Petitioner's behalf. (D.I. 2) The Petition challenges Petitioner's 2002 convictions and asserts "a *Brady v. Maryland*[, 373 U.S. 83 (1963)] claim based on evidence that was not disclosed by the State until June 19, 2014, just shy of 10 years after he filed his first petition." (D.I. 15 at 2) The State filed a Motion to Dismiss, asserting that the Petition should be dismissed as an unauthorized second or successive habeas petition or, alternatively, as time-barred. (D.I. 13) The Honorable Gregory M. Sleet dismissed the Petition for lack of jurisdiction after holding that it constituted an unauthorized second or successive habeas request, but transferred the case to the Third Circuit to be treated as an application for permission to file a second or successive habeas petition. (D.I. 16; D.I. 17) The Third Circuit issued an Order granting permission to file the second or successive Petition. (D.I. 20) The authorized second or successive Petition is ready for review.

### A. OCME CRIMINAL INVESTIGATION

The relevant information regarding Petitioner's lack of knowledge of evidence mishandling at the Office of the Chief Medical Examiner ("OCME") is set forth below:

> In February 2014, the Delaware State Police ("DSP") and the Department of Justice ("DOJ") began an investigation into criminal misconduct occurring in the Controlled Substances Unit of the OCME.
>
> The investigation revealed that some drug evidence sent to the OCME for testing had been stolen by OCME employees in some cases and was unaccounted for in other cases. Oversight of the lab had been lacking, and security procedures had not been followed. One employee was accused of "dry labbing" (or declaring a test result without actually conducting a test of the evidence) in several cases. Although the investigation remains ongoing, to date, three OCME employees have been suspended

2

> (two of those employees have been criminally indicted), and the Chief Medical Examiner has been fired.
>
> There is no evidence to suggest that OCME employees tampered with drug evidence by adding known controlled substances to the evidence they received for testing in order to achieve positive results and secure convictions. That is, there is no evidence that the OCME staff "planted" evidence to wrongly obtain convictions. Rather, the employees who stole the evidence did so because it in fact consisted of illegal narcotics that they could resell or take for personal use.

*Brown v. State*, 108 A.3d 1201, 1204-05 (Del. 2015).

## II. TIMELINESS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling).

Petitioner's § 2254 Petition, filed in 2016, is subject to the one-year limitations period contained in § 2244(d)(1). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The State contends that the starting date for the limitations period is sometime in June 2004, the date on which Petitioner's conviction became final. (D.I. 13 at 9) Petitioner, however, appears to assert that he is entitled to a later starting date for AEDPA's limitations period – June 19, 2014 – under § 2244(d)(1)(D), because that is the date on which the State issued a report disclosing allegations that Farnam Daneshgar, the chemist who testified at Petitioner's trial, had been indicted on charges related to falsifying lab reports in 2014 and that he had engaged in fraudulent behavior from as early as 1990. (D.I. 15 at 2) Petitioner focuses on the following information from the June 2014 report:

> Farnam Daneshgar left OCME in 1990 after it was alleged that he was "dry labbing" testing results; the phrase "dry labbing" is used to describe the practice of declaring a result without performing the analytical testing to produce the result. Other witnesses claim that Daneshgar has engaged in other instances of "dry labbing" since his return to OCME in 2006.

(D.I. 15 at 3) In addition, Petitioner states that the

> report also raised questions as to the status of Daneshgar's employment in 2002, around the time he purportedly tested the substances in [Petitioner's] case. Further, at the time of [Petitioner's] trial, it was no secret to those running OCME that Daneshgar had credibility issues because he had already been terminated once for suspected "dry labbing" This evidence was *Brady* material to which Manuel was entitled prior to trial.

(D.I. 15 at 3) Petitioner contends that there is a reasonable probability that the result of his trial would have been different if defense counsel had been aware of the information regarding Daneshgar's earlier misconduct. (D.I. 7 at 10)

4

A petitioner establishes a *Brady v. Maryland* violation by showing that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or it had impeachment value: (2) the prosecution suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004). "[I]mplicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial." *United States v. Agurs,* 427 U.S. 97, 105 (1976). A defendant is entitled to a new trial where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is [defined as] a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 681–82 (1985). Prejudice occurs "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280.

The Court is not persuaded that Petitioner is entitled to a later starting date of June 19, 2014 under § 2244(d)(1)(D) on the facts he has presented. First, nothing in the record indicates that Daneshgar committed any misconduct in Petitioner's case. Second, the fact that Daneshgar engaged in misconduct in the 1990s and then again sometime after 2010 does not support Petitioner's speculation that the outcome of his trial in 2003 may have been different if defense counsel had been aware of Daneshgar's misconduct in the 1990s.

Nevertheless, since the instant Petition is time-barred even if June 19, 2014 is used as the starting date, the Court will exercise prudence and presume, without deciding, that the limitations period in this case started to run on June 19, 2014. Applying the one-year limitations period to that date, Petitioner had until June 19, 2015 to timely file his Petition. *See Wilson v. Beard*, 426

F.3d 653 (3d Cir. 2005) (holding that Federal Rule of Civil Procedure 6(a) and (e) applies to federal habeas petitions); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n. 3 (D. Del. Apr. 27, 2015)(AEDPA's one-year limitations period is calculated according to the anniversary method, *i.e.*, the limitations period expires on the anniversary of the triggering date, which is usually the date on which the judgment of conviction became final).

Petitioner did not file the instant § 2254 petition until September 26, 2016, approximately one year and three months after the expiration of AEDPA's statute of limitations. Therefore, the Petition is time-barred, unless the limitations period can be statutorily or equitably tolled. *See Holland v. Florida*, 560 U.S. 631, 645 (2010)(equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling). The Court will discuss each doctrine in turn.

### A. Statutory Tolling

Pursuant to § 2244(d)(2), a properly filed application for state collateral review tolls AEDPA's limitations period during the time the application is pending in the state courts, including any post-conviction appeals, provided that the application is filed during AEDPA's one-year limitations period. *Swartz v. Meyers*, 204 F.3d 417, 424-25 (3d Cir. 2000). However, the limitations period is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Attorney of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

When Petitioner filed his Rule 61 motion on June 4, 2015, 350 days of AEDPA's limitations period had expired. The Rule 61 motion tolled the limitations period from June 4, 2015 through January 28, 2016, the date on which the Delaware Supreme Court affirmed the Superior Court's denial of the motion. The limitations clock started to run again on January 29,

2016, and ran the remaining fifteen days until it expired on February 12, 2016. Thus, the Petition is time-barred, unless equitable tolling applies.

**B. Equitable Tolling**

Pursuant to the equitable tolling doctrine, the one-year limitations period may be tolled in very rare circumstances for equitable reasons when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, **and** (2) some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (emphasis added). Equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *Id.*; *Miller v. New Jersey State Dept. of Corr.*, 145 F.3d 616, 618-19 (3d Cir. 1998). A petitioner's obligation to act diligently applies to both his filing of the federal habeas application and to his filing of state post-conviction applications. *See LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir.2005). In turn, the Third Circuit has explained that equitable tolling of AEDPA's limitations period may be appropriate in the following circumstances:

> (1) where the defendant (or the court) actively misled the plaintiff;
> (2) where the plaintiff was in some extraordinary way prevented from asserting his rights; or
> (3) where the plaintiff timely asserted his rights mistakenly in the wrong forum.

*Jones,* 195 F.3d at 159; *Thomas v. Snyder*, 2001 WL 1555239, at *3-4 (D. Del. Nov. 28, 2001).

Here, Petitioner contends that equitable tolling is warranted because a significant portion of his "delay" in filing the instant Petition was "caused by extraordinary circumstances created by a deceptive member of the prosecution team – *i.e.* OCME." (D.I. 15 at 8-9) He contends that

> [i]t would be inequitable to prevent him from seeking relief when several similarly situated petitioners will have their claims heard even though they discovered the misconduct at the same time as he

7

> did, filed their petitions at the same time or after he did and exhausted their state remedies around the same time as he did. It would be unfair to prevent him from having his claim heard given the very specific nature of Daneshgar's misconduct and the State's significant reliance upon his credibility to obtain [Petitioner's] conviction at trial. It is unfair to penalize him because his counsel's state resources were significantly strained due to the hundreds of motions they filed upon discovery of the misconduct.

(D.I. 15 at 9) Petitioner also states that

> [e]xtraordinary circumstances resulted from the systemic nature of the government misconduct. Counsel had to: 1) identify which of a vast number of clients had viable claims; 2) contact all of those clients; 3) file a vast number of petitions for those with legitimate claims; 4) operate with limited state resources strained by the volume of filings; 5) stop filing petitions in order to research and brief issues raised due to the Superior Court's abrupt and drastic amendment to Rule 61 without notice to counsel; 6) prepare for, participate in, and submit briefing following a 3-day evidentiary hearing to uncover further evidence of OCME misconduct; and 7) repeatedly supplement filed motions with new evidence of misconduct that continued to trickle out over the next two or more years.

(D.I. 15 at 9-10)

Petitioner's equitable tolling argument is unavailing. To begin, the events on Petitioner's "list" of alleged "extraordinary circumstances" do not constitute extraordinary circumstances for equitable tolling purposes. *See Hendricks v. Johnson*, 62 F. Supp. 3d 406, 411 (D. Del. 2014)(explaining that "attorney error, miscalculation, inadequate research, or other mistakes" do not amount to extraordinary circumstances for equitable tolling purposes). Even if these "events" could somehow be construed as extraordinary, Petitioner has not demonstrated that they actually prevented him from filing a basic habeas petition. *See Ross v. Varano*, 712 F.3d 784, 803 (3rd Cir. 2013)("[F]or a petitioner to obtain relief [via equitable tolling] there must be a causal connection, or nexus, between the extraordinary circumstances he faced and the

petitioner's failure to file a timely federal petition."). For instance, Petitioner concedes he learned of Daneshgar's misconduct on June 19, 2014. (D.I. 15 at 8) Given this concession, the Court is not persuaded by Petitioner's assertion that he could not have filed his Rule 61 motion before June 4, 2015. Additionally, since Petitioner was aware of enough basic facts of the OCME scandal in June 2014, he has failed to demonstrate that he was **actually prevented** from filing a potentially timely protective petition[2] in this Court before the expiration of AEDPA's limitations period in February 2016. *See Ross*, 712 F.3d at 803 (3rd Cir. 2013). Petitioner's act of filing a protective petition around the time he filed his Rule 61 motion would also have helped to demonstrate reasonable diligence on Petitioner's part. *See, e.g., Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)(once the extraordinary circumstance ends, petitioner must exercise reasonable diligence in filing his petition).

For all of these reasons, the Court concludes that the doctrine of equitable tolling is not available to Petitioner on the facts he has presented. Accordingly, the Court will deny the instant Petition as time-barred.

## III. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v.*

---

[2]In *Pace v. DiGuglielmo*, the Supreme Court explained that a "petitioner's reasonable confusion about whether a state filing would be timely" when attempting to exhaust state remedies may constitute good cause for him to file a "protective petition in federal court and ask[] the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." 544 U.S. 408, 416 (2005).

9

*McDaniel*, 529 U.S. 473, 484 (2000). When a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484.

The Court has concluded that the instant Petition is time-barred. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## IV. CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 is **DENIED**. An appropriate Order will be entered.